1  ROSENBERG, SHPALL & ASSOCIATES
2  Tomas Shpall, Esq., (SBN 108622)
   401 "B" Street, Suite 2209
3  San Diego, California 92101
   Telephone:    (619) 232-1826
4  Facsimile:    (619) 232-1859

FILED

08 OCT 16 PM 2: 58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                        DEPUTY

5  *Attorneys for Plaintiff*

6

7

8                  UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA CUSTOMS, INC., a Louisiana          Case No.
12  corporation, and all others similarly situated,
                                                   '08 CV 1900 JAH AJB
13              Plaintiff,
                                                   CLASS ACTION COMPLAINT FOR
14  v.                                             INJUNCTIVE RELIEF FOR VIOLATION
                                                   OF THE SHERMAN ACT
15  GENERA CORPORATION, a California
    corporation; MAXZONE VEHICLE
16  LIGHTING CORP., a California corporation;
    E-LITE AUTOMOTIVE, INC., a California
17  corporation, TYC BROTHER INDUSTRIAL            DEMAND FOR JURY TRIAL
    CO., LTD., a Taiwanese corporation; DEPO
18  AUTO PARTS INDUSTRIAL CO., LTD., a
    Taiwanese corporation and EAGLE EYES
19  TRAFFIC INDUSTRIAL CO., LTD., a
    Taiwanese corporation,
20
                Defendants.
21

22      Plaintiff California Customs, Inc. ("Plaintiff") brings this action on its own behalf and on

23  behalf of all those similarly situated to obtain injunctive relief for Defendants' violations of the

24  federal antitrust laws. Defendants' violations stem from their artificial manipulation of the

25  market for aftermarket automotive lighting products. Plaintiff demands a trial by jury. Plaintiff

26  alleges on information and belief the following:

27

28

655081 v 1                        1                        CASE NO.

## JURISDICTION AND VENUE

1.     This action is brought pursuant to 15 U.S.C. § 26 against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1. This action is also brought to secure injunctive relief against Defendants to prevent them from further violating Section 1 of the Sherman Act, as hereinafter alleged.

2.     Jurisdiction in this Court derives from 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 26.

3.     Venue lies in this District pursuant to 15 U.S.C. §§ 22 and 26 and 28 U.S.C. §§ 391(b) and (c). Venue is proper here because, during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described below was carried out in this District.

## THE PARTIES

4.     Plaintiff California Customs, Inc. is a corporation duly organized and existing under the laws of the State of Louisiana with its principal place of business in Harvey, Louisiana. During the relevant period, Plaintiff purchased aftermarket automotive lighting products sold by one or more of the Defendants.

5.     Defendant Genera Corporation ("Genera") is a corporation duly organized and existing under the laws of the State of California with its principal place of business located at 26 Centerpointe Drive, Suite 100, La Palma, California 90623. Genera imports, distributes and sells, throughout the United States, aftermarket automotive lighting products imported from Taiwan, generating $178 million a year in sales.  Genera is a wholly or partially owned subsidiary of defendant TYC and was formed by TYC in 1991 to be its sole and exclusive United States distributor.

6.     Defendant Maxzone Vehicle Lighting Corp. ("Maxzone") is a corporation duly organized and existing under the laws of the State of California with its principal place of

1    business located at 11016 Mulberry Avenue, Suite B, Fontana, California 92337. Maxzone

2    imports, distributes and sells, throughout the United States, aftermarket automotive lighting

3    products imported from Taiwan. Maxzone is a wholly or partially owned subsidiary of defendant

4    Depo and was formed by Depo in 1997 to be its sole and exclusive United States distributor.

5         7.    Defendant E-Lite Automotive Inc. ("E-Lite") is a corporation duly organized and

6    existing under the laws of the State of California with its principal place of business located at

7    14401 Monte Vista Avenue, Chino, California 91708. E-Lite imports distributes and sells,

8    throughout the United States, aftermarket automotive lighting products imported from Taiwan. E-

9    Lite is a wholly or partially owned subsidiary of defendant Eagle Eyes and was formed by Eagle

10   Eyes in 2006 to be its sole and exclusive United States distributor.

11        8.    Defendant TYC Brother Industrial Co. Ltd. ("TYC") is a corporation organized

12   and existing under the laws of Taiwan with its principal place of business located at 72-2 Shin-leh

13   Road, Tainan Taiwan 702. TYC is a leading manufacturer of aftermarket automotive lighting

14   products which it manufactures in Taiwan and exports for sale around the world, including the

15   United States.

16        9.    Defendant Depo Auto Parts Ind. Co., Ltd. ("Depo") is a corporation organized and

17   existing under the laws of Taiwan with its principal place of business located at 20-3, Nan Shih

18   Lane, Lu Kang, Chang-Hwa Hsien, Taiwan 638. Depo is a leading manufacturer of aftermarket

19   automotive lighting products which it manufactures in Taiwan and exports for sale around the

20   world, including the United States.

21        10.   Defendant Eagle Eyes Traffic Ind. Co. Ltd. ("Eagle Eyes") is a corporation

22   organized and existing' under the laws of Taiwan with its principal place of business located at

23   No. 27 Lane 764 Chung Shan N. Rd., Yung Kang City, Taiwan Hsien, Taiwan, Eagle Eyes is a

24   manufacturer of aftermarket automotive lighting products which it manufactures in Taiwan and

25   exports for sale around the world, including the United States.

26

27                              **CO-CONSPIRATORS**

28        11.   Various other companies and individuals, not named as Defendants in this

1    Complaint, participated as co-conspirators in the acts complained of herein, and performed acts

2    and made statements in furtherance of such conspiracy.

3

4                              **TRADE AND COMMERCE**

5          12.    The relevant product market, for antitrust purposes, consists of aftermarket

6    automotive lighting products. Aftermarket automotive lighting products constitute a relevant

7    market distinct from original equipment replacement parts made by the manufacturers of

8    automobiles.  There is a significant difference in the wholesale price, often as large as 50%,

9    between an OEM product and a comparable aftermarket product. In addition, most insurance

10   carriers for automobile collisions require automotive body shops to purchase and use aftermarket

11   products on repairs paid for by the insurance carriers. Accordingly, aftermarket products and

12   products of original equipment manufacturers are not reasonably interchangeable substitutes from

13   the point of view of the purchaser and are not in direct and substantial competition with each

14   other.

15         13.    Aftermarket prices are cheaper than OEM prices because aftermarket companies

16   specialize in such products and tend to redesign and make more cost efficient changes than the

17   OEM, resulting in cheaper prices.

18         14.    The relevant geographic market is the United States.

19

20                            **CLASS ACTION ALLEGATIONS**

21         15.    Plaintiff brings this action on behalf of itself and as a class action under the

22   provisions of Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf

23   of the following class:

24              All persons and entities who purchased in the United States aftermarket automotive

25              lighting products sold by a Defendant between January 1, 2004 and the present.

26              Excluded from the class are governmental entities, Defendants, co-conspirators, and

27              the present and former parents, predecessors, subsidiaries and affiliates of the

28              foregoing.

1   Plaintiff believes that there are hundreds, if not thousands of class members, the exact number

2   and their identities being known by Defendants.

3       16.    The class is so numerous and geographically dispersed that joinder of all members

4   is impracticable.

5       17.    There are questions of law and fact common to the Class, which questions relate to

6   the existence of the conspiracy alleged, and the type and common pattern of inquiry sustained as a

7   result thereof, including, but not limited to:

8           a.    Whether Defendants engaged in a combination and conspiracy

9   among themselves to fix, raise, maintain and/or stabilize prices of aftermarket automotive

10   lighting products sold in the United States, and its territories and possessions;

11           b.    The identity of the participants in the conspiracy;

12           c.    The duration of the conspiracy alleged in this Complaint and the

13   nature and character of the acts performed by Defendants in furtherance of the conspiracy;

14           d.    Whether the alleged conspiracy violated Section 1 of the Sherman

15   Act;

16           e.    Whether the conduct of Defendants, as alleged in this complaint,

17   caused injury to the business and property of Plaintiff and other members of the Class;

18           f.    The effect of the Defendants' conspiracy on the prices of

19   aftermarket automotive lighting products sold in the United States and its territories and

20   possessions during the Class Period; and

21           g.    Whether injunctive relief is appropriate.

22       18.    Plaintiff is a member of the Class, Plaintiff's claims are typical of the claims of the

23   Class members, and Plaintiff will fairly and adequately protect the interests of the members of the

24   Class. Plaintiff is an indirect purchaser of aftermarket automotive lighting products from one or

25   more Defendants.  Plaintiff's interests are coincident with and not antagonistic to those of the

26   other members of the Class.

27       19.    The prosecution of separate actions by individual members of the Class would

28   create a risk of inconsistent or varying adjudications.

20.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class.

21.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability.

22.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of Defendants. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## THE AFTERMARKET AUTOMOTIVE LIGHTING PRODUCTS MARKET

23.     With over 225 million vehicles in the United States, the automotive aftermarket industry is substantial.  Sales of aftermarket automotive products in the United States exceeded $285 billion in 2007.

24.     Aftermarket automotive lighting products include, but are not limited to, headlamps and bulbs, parking, tail and interior lights, spot lights, fog lights and auxiliary lights.

25.     The percentage of the entire aftermarket automotive products that is made up of lighting products is comparatively small, but still a significant amount of commerce, with approximately $450 million sales in the United States in 2005, with projected growth to approximately $515 million by 2010.

26.     Collectively, the products of the manufacturing Defendants comprise the majority of all aftermarket automotive lighting products sold in the United States, and as a consequence,

1    their importer-distributor Defendant affiliates also control the majority of the aftermarket

2    automotive lighting product market in the United States.

3         27.    The Certified Automotive Parts Association ("CAPA") is a non-profit organization

4    established to develop and oversee a test program guaranteeing the suitability and quality of

5    automotive parts.  Its website states "CAPA encourages competition in the marketplace in the

6    hope that their program will ultimately reduce expense to the consumer and the industry while

7    increasing and assuring part quality."  Defendants Depo, Eagle Eyes, and TYC Brother Industrial

8    Co. are all CAPA participating manufacturers.

9

10                                **DEFENDANTS' ANTITRUST VIOLATIONS**

11        28.    Defendants Genera, Maxzone, and E-Lite are horizontal competitors that conspired

12   to fix the prices of and artificially manipulate the market for the importation, sale and distribution

13   throughout the United States of aftermarket automotive lighting products that are manufactured

14   primarily in Taiwan.  Each of these companies is the exclusive distributor of aftermarket lighting

15   products made by a specific manufacturer located in Taiwan.  Defendant Genera is wholly or

16   partially owned by and is the exclusive importer and seller of the lighting products made by

17   defendant TYC; Defendant Maxzone is wholly or partially owned by and is the exclusive

18   importer and seller of the lighting products of defendant Depo; and defendant E-Lite is wholly or

19   partially owned by and is the exclusive importer and seller of the lighting products of defendant

20   Eagle Eyes.  Defendant manufacturers TYC, Depo and Eagle Eyes also are horizontal competitors

21   that conspired to fix the prices of and artificially manipulate the market for aftermarket

22   automotive lighting products sold in the United States.

23        29.    The Defendants employed anticompetitive tactics to eliminate distributors who

24   refused to participate in Defendants' price fixing scheme, and others who posed a competitive

25   threat.  The effect of Defendants' anticompetitive conduct has been to reduce the number of

26   competitors selling the relevant products to Plaintiff and the Class.

27        30.    Beginning at least as early as January 1, 2004 and continuing up to the present,

28   Defendants and their co-conspirators combined and conspired to unreasonably restrain

655081 v 1             - 7 -            CASE NO.

1   competition in interstate commerce in the importation, sale and distribution of aftermarket

2   automotive lighting products in the United States, in violation of Section 1 of the Sherman Act

3   (15 U.S.C. §1).

4       31.    The purpose and effect of Defendants' price fixing conspiracy has been to

5   eliminate competition among and between themselves and to eliminate customer choice by

6   establishing artificially high and noncompetitive prices for aftermarket automotive lights in the

7   United States. This price fixing agreement constitutes a *per se* violation of Section 1 of the

8   Sherman Act (15 U.S.C. § 1) in that it eliminates true competition, customer choice and serves no

9   legitimate purpose.

10      32.    From at least January 1, 2004 through the present, there has been pervasive price

11  fixing of aftermarket automotive lighting products at both the manufacturing and wholesale

12  levels. Defendants' unlawful conspiracy had the effect of, *inter alia*, raising prices of those

13  products and eliminating competitors from the market, thereby further restraining trade in the

14  importation, distribution and sale of aftermarket automotive lights throughout the United States.

15      33.    According to a former distributor for defendant Eagle Eyes who was present at

16  these meetings, Defendants met and conspired to fix prices of aftermarket automotive lighting

17  products on a number of occasions since 2004.  That former distributor identified by name the

18  executives and managers from the Defendants who participated in meetings with their horizontal

19  competitors to fix prices.  That former distributor also identified the locations where the price

20  fixing meetings took place.

21      34.    Starting at least as early 2004, the representatives of the manufacturers met in

22  Taiwan to fix the prices at which each manufacturer would sell to its distributors and then the

23  United States distributors of these Taiwanese manufacturers separately met, including at the

24  offices of defendant Genera in La Palma, California and at the Automotive Aftermarket Products

25  Expo ("AAPEX"), an industry trade show in Las Vegas, Nevada, to conspire to fix prices of

26  aftermarket automotive lighting products.  Defendants met at the AAPEX, in November, 2004;

27  November, 2005; October 2006; and October, 2007, in furtherance of their anticompetitive

28  conspiracy.

35.    Defendants agreed to fix the prices at which they would sell to their respective customers. At distributor meetings, there was open discussion of the manufacturers' meetings in Taiwan and the prices reached at those meetings. The manufacturers' meetings in Taiwan were attended by the following Defendants through the representatives indicated below:

| | |
|---|---|
| TYC Brother Industrial Co. Ltd.: | Chun-Chi Wu (Chairman/General Manager) |
| Depo Auto Parts Industrial Co., Ltd: | Shiu-Min Hsu (Chairman) and Jui-Hua Lai (General Manager) |
| Eagle Eyes Traffic Industrial Co., Ltd. | Yu-Chu Lin (Chairman) and Ching-Tsung Lai (General Manager) Homy Hsu (Vice President) |

Since 2007, the distributors' meetings in California and Nevada were attended by the following Defendants through the representatives indicated below:

| | |
|---|---|
| E-Lite Automotive, Inc.: | George Lee (President) and Shih Chi (Gary) Lin (Eagle Eyes' owner's son). |
| Genera Corporation: | Drue Hsia (President) and Jackson Kwok (Executive Vice President) |
| Maxzone Vehicle Lighting Corp.: | Polo Shu Sheng Hsu (President) and Galen Chen (Director of Sales and Marketing) |

At meetings between employees of E-Lite, Genera and Maxzone, and possibly others, said employees represented that their United States resale prices were fixed by their respective manufacturers and were graduated (not precisely equal) so as to reflect the market share or consumer preferences for brand. Accordingly, the prices set for Genera, perceived to be the premier aftermarket product, were 2-3 % higher than for Depo and, in turn, Depo's prices were 5-7% higher than Eagle Eyes.

**ANTICOMPETITIVE EFFECTS OF VIOLATION ON PLAINTIFF AND THE CLASS**

36.   The aforesaid conduct of Defendants produced antitrust injury, and unless restrained, will continue to produce the following anticompetitive effects, among others:

(a)   competition in the importation, distribution and sale of aftermarket automotive lighting products in the United States has been and continues to be substantially and unreasonably restricted, lessened, foreclosed and eliminated;

(b)   barriers to entry into the production, distribution and sale of aftermarket automotive lighting products in the United States have been raised;

(c)   prices for customers seeking aftermarket automotive lighting products in the United States have risen and will continue to do so;

(d)   customers seeking aftermarket automotive lighting products in the United States are, and will be, deprived of choice with respect to price and vendor/manufacturer; and

(e)   the importation, distribution and sale of aftermarket automotive products in the United States will continue to be artificially restrained or monopolized.

**INJURY TO PLAINTIFF**

37.   By reason of, and as a direct and proximate result of the violations alleged herein, Plaintiff has suffered and will continue to suffer injury in its business and property by Defendants' and co-conspirators' continuing violations of the antitrust laws. Unless Defendants are restrained, plaintiff and other members of the proposed Class will continue to pay artificially inflated, supracompetitive prices for automotive lighting products.

**FRAUDULENT CONCEALMENT**

38.   Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior to September 3, 2008, when an attendee of the price-fixing meetings made the Defendants' conspiracy public.

39.   Plaintiff could not have discovered the existence of the combination and

1  conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of

2  the deceptive practices and techniques of secrecy employed by the Defendants to avoid detection

3  and affirmatively conceal such violations including, *inter alia,* unscheduled side meetings at trade

4  association meetings, telephone calls, and other private, unmonitored meetings.

5     .     40.    As a result of the fraudulent concealment of the conspiracy, the applicable statute

6  of limitations affecting the causes of action by Plaintiff and the members of the Class was tolled.

7

8  **COUNT I**

9  **(Violation of the Sherman Act Section 1, 15 U.S.C. § 1)**

10       41.    Plaintiff incorporates by reference as if fully set forth herein the allegations

11  contained in the preceding paragraphs of this Complaint.

12       42.    Beginning at least as early as 2004, and continuing to the present, Defendants and

13  their co-conspirators, by and through their officers, directors, employees, agents or other

14  representatives, entered into a continuing agreement, understanding and conspiracy in restraint of

15  trade to artificially raise, fix, maintain and/or stabilize prices for aftermarket automotive lighting

16  products, which is illegal *per se* under Section 1 of the Sherman Act (15 U.S.C. § 1).

17       43.    Defendants' unlawful conduct resulted in artificially high, supra-competitive

18  prices being charged by Defendants and their co-conspirators to Plaintiff and the members of the

19  Class for aftermarket automotive lighting products.

20       44.    Plaintiff and members of the Class paid more for aftermarket automotive lighting

21  products than they would have paid in a competitive marketplace, unfettered by Defendants'

22  collusive and unlawful price-fixing.

23       45. ·   As a direct and proximate result of Defendants' scheme, Plaintiff and the members

24  of the Class were injured in their respective businesses and property, in amounts which are

25  presently undetermined. Plaintiff's injuries consist of paying higher prices for aftermarket

26  automotive lighting products than it would have paid absent Defendants' conduct.  Plaintiff's

27  injuries are of the type the antitrust laws were designed to prevent and flow from that which

28  makes Defendants' conduct unlawful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by Conspiring Parties be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.    That judgment be entered for Plaintiff and members of the Class against Conspiring Parties for the costs of this action, including reasonable attorneys' fees.

D.    That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing to engage in the anticompetitive conduct described herein.

E.    That Plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rules 38 and 39 of the Federal Rules of Civil Procedure and the Constitution of the United States, Plaintiffs demand a trial by jury of all issues so triable.

Dated:      October 16 2008

ROSENBERG, SHPALL & ASSOCIATES

By: _____

Tomas A. Shpall, Esquire

*Counsel for Plaintiff California Customs, Inc.*

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS
CALIFORNIA CUSTOMS, INC., a Louisiana corporation, and all others similarly situated

**DEFENDANTS**
GENERA CORPORATION, a California corporation; MAXZONE VEHICLE LIGHTING CORP., a California corporation; E-LITE AUTOMOTIVE, INC., a California corporation, TYC BROTHER INDUSTRIAL CO., LTD., a Taiwanese corporation; DEPO AUTO PARTS IND. CO., LTD., a Taiwanese corporation and EAGLE EYES TRAFFIC INDUSTRIAL CO., LTD., a Taiwanese corporation

**(b)** County of Residence of First Listed Plaintiff  Jefferson Parrish, LA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  CALIFORNIA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Tomas Shpall, Esq. (#108622)
Rosenberg, Shpall & Associates
401 B Street, Suite 2209
San Diego, CA 92101
619-232-1826

Attorneys (If Known)

**'08 CV 1900 JAH AJB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 1
Brief description of cause:
Conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize prices for aftermarket automotive lighting products

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23        DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
October 16, 2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT #  156177      AMOUNT  $350      APPLYING IFP ____      JUDGE ____      MAG. JUDGE ____

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 156177   — BH

# October 16, 2008
# 14:51:56

# Civ Fil Non-Pris
USAO #.: O8CV1900 CIVIL FILING
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC#8203

# Total—>  $350.00

FROM: CALIF. CUSTOMS INC V. GENERA
        CIVIL FILING